**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

SYLVESTER TERRY,

                **Plaintiff,**

v.                                    **Case 2:13-cv-02121-SHL-cgc**

SHELBY COUNTY GOVERNMENT
FIRE DEPARTMENT,

                **Defendant.**

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Shelby County Government Fire Department's ("Defendant

or "Fire Department") Motion for Summary Judgment.  (Docket Entry "D.E." #30).  All pretrial

matters within the Magistrate Judge's jurisdiction have been referred for determination pursuant to

28 U.S.C. § 636(b)(1)(A) and all other pretrial matters have been referred for report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).  (D.E. #7)  For the reasons set forth

herein, it is recommended that Defendant's Motion for Summary Judgment be GRANTED.

**I.  Introduction**

On February 26, 2013, Plaintiff filed a pro se Complaint under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.  (D.E. #1, #10).[1]  Plaintiff alleged that he was discriminated

_____

[1]  Defendant filed a Motion for More Definite Statement (D.E. #6) stating that he
believed portions of Plaintiff's hand-written Complaint were illegible.  In response, Plaintiff
typed new responses to the illegible questions in his Complaint ("Supplemental Complaint") and

against on the basis of his race. (Compl. ¶ 9).[2]  Plaintiff also claims that he was discriminated

against for "whistleblowing." (Supp. Compl. at 1).  Plaintiff further describes the circumstances

under which Defendant discriminated against him as follows:

> The reprisal / retaliation began when I was question [sic] the requirements for top
> performer in the year 2011 and it lead [sic] to my discovery of my 2010 performance
> appraisal written in comments by myself being unlawfully changed without my
> knowledge.  A form of a complaint and/or whistle blowing.
>
> . . . .
>
> I am and continue to be treated different from the other employees on the department
> by having my government 2010 performance appraisal illegally tampered with.
> Once I found this out my promotion to Fire Lieutenant was illegally tampered with
> to purposely skip me over for promotion in July 2012/Aug 2012.  Another form of
> retaliation was used in of [sic] form of discipline which was a 72 hours suspension
> issued in year of 2012.  Preferential treatment of other coworkers.

(Supp. Compl. at 1-2).[3]

Plaintiff alleges that the discriminatory acts are still being committed by Defendant.  (Compl.

---

filed it with the Court.  (D.E. #10).  The Court will rely solely upon the Supplemental Complaint
for the responses to Questions 9(d), 10, and 12(d).

[2]  Plaintiff's Complaint states that he was discriminated against on or about November 1,
2011.  Plaintiff's Charge of Discrimination with the Equal Employment Opportunity
Commission sets forth that this was the date on which he discovered that his 2010 Performance
Appraisal had been altered.  (Compl. at 5).  Plaintiff's Supplemental Complaint sets forth dates
of additional alleged discriminatory acts.

[3]  Plaintiff's Supplemental Complaint alleges that he suffered "retaliation" due to the
unlawful changes to his 2010 Performance Appraisal and his seventy-two hour suspension in
2012.  "Retaliation" is generally a term of art in the Title VII context and refers to discriminatory
actions taken by an employer because the employee engaged in protected activity protected by
Title VII.  *See* 42 U.S.C. § 2000e-3(a); *Michael v. Caterpillar Financial Srvs. Corp.*, 496 F.3d
584, 595 (6th Cir. 2007); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).
However, Plaintiff's Supplemental Complaint does not allege that he was discriminated against
on the basis of any protected activity.  Instead, it appears that Plaintiff intends to use the term
"retaliation" to refer to the alleged discrimination on the basis of race.  Accordingly, it is
recommended that the Supplemental Complaint be construed as alleging Title VII claims of
racial discrimination rather than Title VII claims of retaliation.

¶ 11). Plaintiff requests as follows: that his disciplinary record be cleared and restored to reflect "no discipline" in his files; that he be returned "all pay from the 72 hour discipline administered in 2012"; that "all loss of employee benefits that was due to the discipline, illegal tampering of performance appraisal 2010" be restored; that he be promoted to fire Lieutenant with his "choice of assignment"; and, that he be given "[b]ack pay of skip over promotion." (Suppl. Compl. at 2).

On May 5, 2014, Defendant filed the instant Motion for Summary Judgment along with its exhibits thereto. (D.E. #30, #30-1, #30-2, #30-3, #30-4). On May 9, 2014, Defendant filed its Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment and "Dale H. Burress's Unsworn Statement under Penalty of Perjury." (D.E. #33, #33-1).[4]

Plaintiff did not file a timely response to Defendant's Motion for Summary Judgment pursuant to Local Rule 56.1. On June 18, 2014, the Court issued an Order to Show Cause directing Plaintiff to respond within fourteen days of the entry of the Order as to why the Court should not consider the Motion for Summary Judgment and recommend that it be granted. On July 7, 2014, which is beyond the deadline set in the Court's Order to Show Cause, Plaintiff filed his Response. (D.E. #36). As Plaintiff's Response failed to comply with the timeliness provisions of Local Rule 56.1 and the Court's June 18, 2014 Order to Show Cause, and as Plaintiff's Response does not comply with the provisions of Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1(b) governing the requirements to cite to evidence in support thereof, it is recommended that Plaintiff's Response not be considered for purposes of this Motion for Summary Judgment. It is

---

[4] Defendant had previously requested and been permitted leave to file a seventeen-page Statement of Undisputed Material Facts (D.E. #31), which the Court granted (D.E. #32).

further recommended that Defendant's Statement of Undisputed Material Facts be deemed undisputed pursuant to Local Rule 56.1(d).

On August 12, the Court ordered Defendant to file excerpts of Plaintiff's deposition that were cited to in its Statement of Undisputed Material Facts but were not contained in the record. On that same date, Defendant filed these deposition excerpts. (D.E. #38).[5]

## II. Proposed Findings of Fact

### A. Promotional Process & 2010 Rankings for Driver and Lieutenant Promotions

Dale H. Burress ("Chief Burress") currently serves as Fire Chief of the Fire Department. (Burress Declaration ("Burress Decl.") ¶ 1). The Fire Department provides fire and emergency medical services to the citizens of the unincorporated areas of Shelby County, Tennessee, and to the cities of Arlington, Lakeland, and Millington, Tennessee. (*Id.* ¶ 2). Chief Burress has been employed by the Fire Department since August 16, 1985. (*Id.* ¶ 3). On May 1, 2012, he was promoted to the position of Deputy Chief. (*Id.*). On or about February 1, 2014, he was promoted to the position of Fire Chief. (*Id.*) As Fire Chief, he is responsible for the day-to-day operations of the Fire Department, which include selecting and recommending candidates for promotion as openings develop. (*Id.*) Chief Burress bases his promotional decisions on whom he believes will be the "best person for the job." (*Id.* ¶ 4). A candidate's race has never been a factor in any of his employment decisions since he has been employed by the Fire Department. (*Id.*).

---

[5] As set forth above, Defendant's exhibits in support of its Motion for Summary Judgment are filed in multiple docket entries. Exhibits 1-31 are filed in D.E. #30-2. What is referred to as Exhibit 32 but not marked as such is filed in D.E. #30-3. Exhibits 33 and 34 are filed in D.E. #30-4. Dale H. Burress's Declaration is filed at D.E. #33 but does not contain an exhibit number. Plaintiff's Deposition is filed at D.E. #38 but also does not have an exhibit number.

In 2010, Plaintiff participated in the promotional process for two separate positions with the Fire Department—Driver and Lieutenant. (*Id.* ¶ 5). The initial screening of applicants to determine eligibility for promotion was conducted by the Shelby County Human Resources Department in cooperation with I/O Solutions, Inc., a public safety selection consulting firm. (*Id.* ¶ 6). The selection process was designed to evaluate each applicant's knowledge, aptitude, managerial skills, leadership ability, attendance record, longevity, and past performance. (*Id.* ¶ 7).

Each interested applicant who met the minimum requirements for the positions of Driver and Lieutenant was given a written test designed to gauge the applicant's knowledge, skills, and abilities for the position. (*Id.* ¶ 8). Applicants for the Lieutenant position were also given a scenario-based practical exam, and applicants for the Driver position were given a practical exam on "driving and pump operations." (*Id.* ¶ 9). An applicant's race was not a factor in the promotional process. (*Id.* ¶ 10).

On or about February 26, 2010, Michael Lewis ("Lewis"), the Administrator of Human Resources for Shelby County Government, sent the Fire Department a list of candidates who he had certified as eligible for promotion to the rank of Driver and a list of candidates who he had certified as eligible for promotion to the rank of Lieutenant. (*Id.* ¶ 11; Def.'s Mot. for Summ. J., Exhs. 1 & 2 ("Driver Rank List" and "Lieutenant Rank List")). On February 26, 2010, Pat Samuels, a manager in the Shelby County Human Resources Department, notified Plaintiff that he had made the list of certified eligible individuals for "possible promotion" to the rank of Driver and Lieutenant. (Burress Decl. ¶ 12; Def.'s Mot. for Summ. J., Exhs. 3 & 4).[6]

_____

[6] The Driver Rank List and Lieutenant Rank list state that they set forth individuals' eligibility for promotion from March 1, 2010 until March 1, 2012. (Def.'s Mot. for Summ. J., Exhs. 1 & 2) Lewis's February 26, 2010 letters to Plaintiff also stated that the list of eligible

Inclusion on the list of eligible individuals does not guarantee promotion. (Burress Decl. ¶ 13). In deciding who should be promoted, the Fire Chief is not obligated to follow the numerical ranking of the candidates on the list of eligible individuals because every person on the list is deemed to be qualified for the position. (*Id*. ¶ 14). The Fire Chief selects and promotes the candidates he considers best qualified and best suited for the position regardless of their numerical rank on the list of eligible individuals. (*Id*.)

### B. Plaintiff's 2010 Performance Appraisal

At all times relevant to Plaintiff's claims in this action, Shelby County Government followed a practice of completing performance appraisals for county employees. (Burress Decl. ¶ 44). Plaintiff signed one such performance appraisal on May 20, 2010. (*Id*.; Def.'s Mot. for Summ. J., Exh. 33). After this document was initially prepared and revised, someone discovered that an certain "X"s had inadvertently and/or incorrectly been placed in certain boxes. (Burress Decl. ¶ 44; Def.'s Mot. for Summ. J., Exh. 34). This was clearly a mistake, because the top box "should have been left blank" because it was "clearly instructional" and "no marks should have been placed" in any boxes "on the top horizontal line." (Burress Decl. ¶ 44).

After the error in Plaintiff's performance appraisal was discovered, someone corrected the mistake by scratching through the inadvertent and/or incorrect "X" marks. (Burress Decl. ¶ 46). They did so without notifying Plaintiff of the correction. (*Id*.) As a result of the corrections, the numerical rating of Plaintiff's "Performance Expectations" score was revised downward to 3.0 from

---

candidates "will expire **March 1, 2012**, unless depleted by use prior to that time." (Def.'s Mot. for Summ. J., Exhs. 3 & 4). As set forth, *infra*, the promotion selections for Driver and Lieutenant were not made until July 2012 to be effective August 1, 2012; however, the parties do not raise any issues regarding the promotion decision being made after the eligibility date.

3.17. (*Id*.; Def.'s Mot. for Summ. J., Exhs. 33-35 (collectively "2010 Performance Appraisal")).

Since Plaintiff first brought this matter to the attention of the Fire Department several years ago, no one has been able to determine who made the mistake on his performance appraisal. (Burress Decl. ¶ 45). On or before December 15, 2011, Plaintiff met with Harvey Kennedy ("Kennedy"), the Chief Administrative Officer for Shelby County Government, to find out why there were differing copies in his 2010 Performance Appraisal. (*Id*.) On December 15, 2011, Kennedy sent Plaintiff a letter explaining that they "were not able to determine conclusively what happened and why there were differing copies of the appraisal for the same time period." (*Id*.; Def.'s Mot. for Summ. J., Exh. 31).

Plaintiff admits that he was thankful that Kennedy's investigation was "as fair as possible" but asserts that it was still "inconclusive" because he "couldn't determine" who altered his 2010 Performance Appraisal. (Pl.'s Dep. at 150:4-151:13). Plaintiff testified, when asked whether he intended to raise a "whistleblower claim" in his Complaint or Supplemental Complaint, as follows: "I used the term whistleblowing because of my performance evaluation . . . . [because w]hen I went to my superior chain of command about it, I felt that they got upset." (Pl.'s Dep. at 148:16-149:1).

### C. Top Performer Awards

In previous years, Shelby County employees were ranked in two categories—management and non-management—based on their performance appraisal scores. (Burress Decl. ¶ 48). The top ten percent of employees in each department would receive recognition as top performers, which was acknowledged by a certificate and a congratulatory letter from the Mayor. (*Id*.) They would also receive a monetary award of $100.00 provided that they had no disciplinary issues. (*Id*.)

Plaintiff's numerical score from his 2010 Performance Appraisal "was such that he was not

in the range of persons who were eligible to be considered for the top performer award. Even if he had scored 3.17, [Plaintiff] would not have been in the range of persons eligible to be considered for the top performer award. In 2010, an employee had to score at least 3.38 to be considered eligible for the top performer award." (*Id.* ¶ 49). "Changing and recalculating [Plaintiff's Performance Expectations] Score did not adversely affect his eligibility to be recognized as a top performer during 2010 or 2011 or at any time since then." (*Id.* ¶ 47).

### D. March 1, 2012 Incident Involving Engine 62

On March 1, 2012, Plaintiff was driving Fire Engine 62 when he ran into a fire hydrant at Fire Station 62. (Burress Decl. ¶¶ 21-22). As a result of the accident, the fire engine suffered damage to the "tire, mud flap, fender wheel well, wheel rim, and lug nut covers" and a traffic "cone" was also damaged when it was "wrapped up in [the] wheel." (*Id.* ¶¶ 21, 23; Def.'s Mot. for Summ. J., Plaintiff's Deposition ("Pl.'s Dep.") at 115:25-116:16). Both the fire engine and the cone were Shelby County Property. (Pl.'s Dep. at 116:5-16).

The accident occurred at approximately 4:00 a.m. as Plaintiff and three others—Lieutenant Richard Russell ("Russell"), Firefighter Andrew Hoard ("Hoard"), and Firefighter Robert "Bobby" Dabbs ("Dabbs")—returned to Fire Station 62 "after a late night run." (Burress Decl. ¶ 22). After Russell, Hoard, and Dabbs exited the vehicle, and as Plaintiff "was preparing to maneuver the vehicle into the station," Plaintiff "and others heard a loud bang." (*Id.*) Plaintiff stopped the vehicle and, "[a]fter setting the parking brake, . . . got out of the vehicle to determine what had caused the noise." (*Id.*; Pl.'s Dep. at 53:1-14). Specifically, he wanted to see if he "struck that hydrant on the side of that station" because, due to a tree blocking some of the light in that area, he was unable to "see that hydrant really clear, especially during that time in the morning." (Pl.'s Dep. at 53-18-

54:7). Plaintiff states that he did not notice any lug nut covers that had been damaged. (Pl.'s Dep. at 56:14-17); however, Plaintiff admits that the lug nut covers were "most likely . . . damaged during the incident," that Hoard "placed" some lug nut covers in his hand, and that within the next several hours he went to a truck store at "Lamar and Airways" to purchase lug nut covers but that those lug nut covers did not fit the engine. (Pl.'s Dep. at 56:20-57:8, 115:9-21; Burress Decl. ¶ 26; Def.'s Mot. for Summ. J., Exh. 12).

Defendant asserts that Plaintiff did not immediately report the incident to his supervisor, Russell. (Burress Decl. ¶ 22). Instead, Defendant claims that, without notifying his supervisor or anyone else, Plaintiff "proceeded to move the engine from the location of the accident to the engine house" and afterwards "attempt[ed] to cover/repair the damage." (*Id*. ¶ 24). According to Russell, Dabbs first notified him "at 0427" that Plaintiff "needed his help." (*Id*. ¶ 22). Plaintiff also "eventually reported" the incident to Russell. (*Id*. ¶ 24). Plaintiff asserts that Russell did not immediately suspect that the fire engine was hit by a hydrant. (Pl.'s Dep. at 140:2-11). The Battalion Chief was not notified of the accident until 27.5 hours after it occurred. (Burress Decl. ¶ 25; Def.'s Mot. for Summ. J., Exh. 12). On the contrary, Plaintiff asserts that he reported the incident to Russell "as soon as it happened," just "moments after." (Pl.'s Dep. at 114:7-23).

On March 2, 2012, Hoard, Dabbs, and Russell provided written statements of what they observed during the early morning hours of March 1, 2012. (Burress Decl. ¶ 27; Def.'s Mot. for Summ. J., Exhs. 5, 6 & 8). Given the information provided, it appeared that Plaintiff had "violated the Fire Department's Standard Operating Procedures by damaging Shelby County property and not

reporting the incident in a timely fashion." (Burress Decl. ¶ 27; Def.'s Mot. for Summ. J., Exh. 28).[7]

Russell recorded the "first report of the incident" in the form of a hand-written March 20, 2012 Interoffice Memo to Battalion Chief Gene Adams ("Battalion Chief Adams"), who is African-American. (Burress Decl. ¶¶ 22, 28, 36; Def.'s Mot. for Summ. J., Exh. 8). The March 20, 2012 report states that Russell first learned of the incident at "0427" when Dabbs told him while "passing in the hall" that Plaintiff needed Russell's help. (Def.'s Mot. for Summ. J., Exh. 8).

Also on March 20, 2012, Battalion Chief Adams issued Plaintiff a written Notice of Proposed Major Discipline listing the charges against him[8] and advising him that a Loudermill hearing would be conducted at 9:30 a.m. on March 29, 2012, at which time Plaintiff would be given an opportunity to respond to the charges that he had violated Shelby County and Fire Department Policies and Procedures. (Burress Decl. ¶¶ 28, 33; Def.'s Mot. for Summ. J., Exh. 9). Plaintiff was further advised that, while he had stated that he "hit the cone near the plug," the repairman opined that the "damage was caused by more than a cone." (Def.'s Mot. for Summ. J., Exh. 9). Specifically, Chris Pinkerton ("Pinkerton"), a shop mechanic at Shelby County Fleet Services, submitted a hand-written

---

[7] Exhibit 28 contains the Shelby County Fire Department Manual of Rules and Regulations, including the General Regulations Covering Conduct, the "Lieutenant—Fire Fighting Bureau" duties that a Lieutenant must perform, and the Apparatus Safety policies. (Burress Decl. ¶ 32; Def.'s Mot. for Summ. J., Exh. 28). Paragraph 34 of the General Regulations Governing Conduct states as follows: "Refusal of an employee to give complete and accurate information shall be grounds for disciplinary actions." (Def.'s Mot. for Summ. J., Exh. 28 at 38 ¶ 34) ("Paragraph 34"). Paragraph 8 of a Lieutenant's duties states as follows: "Promptly report all vehicular accidents, injuries, illness, lost or damaged equipment, malfunctions, and any other unusual condition to the proper authorities and to the Battalion Chief." (*Id*. at 39 ¶ 8) ("Paragraph 8"). Paragraph 9 of the Apparatus Safety policy provide as follows: "Apparatus shall not be operated in any unsafe, reckless or haphazard manner." (*Id*. at 41 ¶ 9) ("Paragraph 9").

[8] Plaintiff was charged with a violations of Paragraphs 9 and 34. (Def.'s Mot. for Summ. J., Exh. 9).

statement on March 27, 2012 opining that he was "very sure that a cone made of plastic or rubber would not cause damage of this extent" and that the "[i]nner fender well need to be repaired or replaced." (Burress Decl. ¶ 30; Def.'s Mot. for Summ. J., Exh. 11).

On March 29, 2012, Battalion Chief Adams conducted the Loudermill hearing. (Burress Decl. ¶ 31). Plaintiff did not have any questions to ask or additional evidence to present at the Loudermill hearing. (Pl.'s Dep. at 143:4-11). Based upon the evidence presented at the hearing, Battalion Chief Adams opined that "there appears to be a cover up" and concluded that Plaintiff would be disciplined for damaging Shelby County property, failing to report the incident in a timely fashion, refusing to give complete and accurate information in violation of Paragraph 34, and operating the apparatus in an unsafe, reckless or haphazard manner in violation of Paragraph 9. (Burress Decl. ¶¶ 31, 34; Def.'s Mot. for Summ. J., Exhs. 12 & 13). As a result of these violations, Plaintiff was advised that he would be suspended for seventy-two hours without pay. (Id.; Def.'s Mot. for Summ. J., Exhs. 12 & 13). Plaintiff's disciplinary sanction was memorialized in a Shelby County Government Disciplinary Action Form. (Burress Decl. ¶ 31; Def.'s Mot. for Summ. J., Exh. 13). There is no evidence that Battalion Chief Adams or anyone else considered Plaintiff's race in deciding to discipline him for violating the rules and policies of the Fire Department. (Burress Decl. ¶ 35).

On April 5, 2012, Russell was suspended for forty-eight hours without pay for not reporting Plaintiff's accident to Battalion Chief Adams in a timely fashion in violation of Paragraph 8. (Burress Decl. ¶ 40; Def.'s Mot. for Summ. J., Exh. 25). On May 10, 2012, Plaintiff met with Thomas Needham ("Needham"), Public Works Director, to discuss his suspension. (Burress Decl. ¶ 37). As a result of their meeting, Needham asked Burress to contact the Shelby County Sheriff

Department's Auto Accident Reconstruction Team to investigate the incident. (*Id.*; Def.'s Mot. for Summ. J., Exh. 17).

On May 17, 2012, Burress met with Deputy Sheriffs Russell Duvall ("Duvall") and Anthony Nelson ("Nelson") at Station 62. (Burress Decl. ¶ 38). Both Duvall and Nelson are certified Auto Accident Reconstructionists employed by the Shelby County Sheriff's Department. (*Id.*) While they examined the apparatus, took measurements, and otherwise investigated the accident, Burress photographed the points of interest that they called to his attention. (*Id.*; Def.'s Mot. for Summ. J., Exh. 32). At the conclusion of their investigation, both Duvall and Nelson advised Burress that the damage to the passenger-side front wheel, tire, and fender well was caused by the apparatus striking the fire hydrant located on the south side of the concrete driveway in front of the station. (Burress Decl. ¶ 38). Neither Duvall nor Nelson prepared a written report of their investigation, and Burress did not request one. (Burress Decl. ¶ 39).

With respect to the relative severity of Plaintiff's seventy-two hour suspension without pay, Hoard and Dabbs had also previously served suspensions for incidents involving property damage unrelated to Plaintiff's March 1, 2010 accident. On June 11, 2010, Hoard was suspended for twenty-four hours without pay for striking a citizen's car and receiving in a traffic citation. (Burress Decl. ¶ 41; Def.'s Mot. for Summ. J., Exh. 26). On or about November 11, 2010, Dabbs was suspended for twenty-four hours without pay for striking a hydrant while backing into the bay at Station 62; however, there is no evidence that Dabbs tried to cover up or hide his involvement in the accident. (Burress Decl. ¶ 42; Def.'s Mot. for Summ. J., Exh. 27). Plaintiff alleges that Dabbs, who is white, only received twenty-four hours suspension even though he "caused more damage to the apparatus and that hydrant"; however, Plaintiff admits that he was driving the fire engine when his March 1,

2010 accident occurred and that Dabbs was not driving the fire engine at the time of his November 11, 2010 incident but, instead, was "on the apparatus floor." (Pl.'s Dep. at 113:15-114:6). Following the completion of the investigation into Plaintiff's March 1, 2010 accident, Battalion Chief Adams retired on September 30, 2013. (Burress Decl. ¶ 36).

### E. 2012 Promotional Selections for Driver and Lieutenant

In July 2012, Fire Chief Clarence Cash ("Chief Cash"), who is African-American and held the position of Fire Chief before Burress, selected Ned Douglas ("Douglas"), Jonathan Hanks ("Hanks"), and Anthony Harrington ("Harrington") for promotion to the rank of Driver. (*Id.* ¶¶ 15, 20). As for their respective rankings on Driver Rank List, Hanks was ranked second, Harrington was third, Douglas was sixteenth, and Plaintiff was twenty-eighth. (*Id.*; Driver Rank List; Pl.'s Dep. at 108:24-25). Chief Cash notified Douglas, Hanks, and Harrington of their promotions to the rank of Driver effective August 1, 2012 by letters dated July 23, 2012. (Burress Decl. ¶ 15; Def.'s Mot. for Summ. J., Exhs. 19-21). Douglas is African-American, and Hanks and Harrington are Caucasian. (Burress Decl. ¶ 16). Plaintiff admits that, to his knowledge, none of the eligible candidates on the Driver Rank List that were ranked below him have been promoted. (Pl.'s Dep. at 109:1-2).

In July 2012, Chief Cash selected Jeremy Havlik ("Havlik"), Usarius Royal ("Royal"), and Larry Robinson ("Robinson") for promotion to the rank of Lieutenant. (Burress Decl. ¶ 17). As for their respective rankings on the Lieutenant Rank List, Havlik was ranked first, Royal was ranked second, Robinson was ranked third, and Plaintiff was ranked seventh. (*Id.*; Lieutenant Rank List). Chief Cash notified Havlik, Royal, and Robinson of their promotions to the rank of Lieutenant effective August 1, 2012 by letters dated July 23, 2012. (Burress Decl. ¶ 17; Def.'s Mot. for Summ.

J., Exhs. 22-24). Havlik is Caucasian, and Royal and Robinson are African-American. (Burress Decl. ¶ 18). Ultimately, Defendant asserts that all of the candidates chosen for promotion to both Driver and Lieutenant were ranked higher than Plaintiff on the list of eligible individuals. (Burress Decl. ¶ 19). However, Plaintiff testified that he believed Robinson was ranked below him. (Pl.'s Dep. at 111:9-20).

The correction of the mistakes on Plaintiff's 2010 Performance Appraisal did not affect his numerical ranking on the lists of eligible individuals for the positions of Driver or Lieutenant because "every applicant for the positions of Driver and Lieutenant was automatically given 5.00 points for their Performance Evaluations, regardless of their actual Evaluations Scores on their Performance Appraisals. (Burress Decl. ¶ 46). The alteration of Plaintiff's Performance Expectations score on his 2010 Performance Appraisal did not influence the selection process whereby six others, instead of him, were selected for promotion to Driver and Lieutenant effective August 1, 2012. (*Id.*) Following the 2012 promotional decisions, Chief Cash retired in January 2014. (Burress Decl. ¶ 20).

With respect to Plaintiff's allegations that he suffered discrimination based on race, when asked if he had any evidence of these claims, he responded, "I can't determine that." (Pl.'s Dep. at 84:20-22). When asked again whether he was alleging that he had been discriminated against on the basis of race, he replied, "It's a possibility it could have happened." (Pl.'s Dep. at 85:7-11).

### F. Plaintiff's 2014 Promotion to Lieutenant

Burress selected Plaintiff for promotion to the position of Lieutenant effective March 16, 2014. (Burress Decl. ¶ 43; Def.'s Mot. for Summ. J., Exh. 30).

### III. Proposed Conclusion of Law

#### A. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party

may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B.  Pro Se Pleadings and Documents

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).  The basic pleading essentials are not abrogated in pro se cases.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)  A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted).  District Courts "have no obligation to act as counsel or paralegal" to pro se litigants.  *Pliler v. Ford*, 542 U.S. 225, 231 (2004).  District Courts are also not "required to create" a pro se litigant's claim for him.  *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

### C.  Title VII

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin"

constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by providing circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997).[9]

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If the plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, or that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the

---

[9] Plaintiff's Complaint and Supplemental Complaint do not raise allegations of direct discrimination; thus, it is recommended that his allegations be considered under the test for circumstantial evidence.

real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotation marks and italics omitted).

## I.  *Plaintiff's 2010 Performance Appraisal*

Plaintiff alleges that the discriminatory acts began when his 2010 Performance Appraisal was "illegally tampered with" by his comments being removed and his evaluation scores being changed without his knowledge.  He further states that he was and continues to be treated differently than other employees because of the alterations to his 2010 Performance Appraisal.  Defendant's Motion for Summary Judgment does not raise specific arguments as to why these allegations of violations of Title VII fail as a matter of law; however, because Defendant has submitted significant evidence on this issue, the Court recommends that Defendant's Motion for Summary Judgment be construed as requesting that this claim be dismissed.

In general, "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007)).  "[T]o characterize a negative performance evaluation as an adverse employment action, the plaintiff must point to a tangible employment action that [he] alleges [he] suffered, or is in jeopardy of suffering, because of the downgraded evaluation."  *White*, 533 F.3d at 402 (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000) (internal quotation marks omitted)).

There is no evidence in the record that any alterations to Plaintiff's employment evaluation had an adverse impact on his wages or salary.  Further, the record is undisputed that, regardless of whether his Performance Expectation score should have been 3.0 or 3.17, he would not have been

eligible for a Top Performer Award in 2010, 2011, or at any time since. The record is also undisputed that the Performance Expectation score had no role in Chief Cash's 2012 decision as to whether Plaintiff should have been promoted to Driver or Lieutenant because all applicants are given the same Performance Expectation score of 5.00 when being considered for these positions. Accordingly, it is recommended that there is no genuine issue of material fact as to whether the alterations to Plaintiff's 2010 Performance Appraisal constituted an adverse employment action. Thus, it is further recommended that Plaintiff's Title VII claim for discrimination on the basis of race for the alterations to his 2010 Performance Appraisal fails as a matter of law.

### ii. Top Performer Awards

It is not clear whether Plaintiff has alleged any discrimination on the basis of race due to not receiving a Top Performer Award in 2011. Defendant's Motion for Summary Judgment does not address any such claim. However, the evidence in the record demonstrates that, even if Plaintiff's 2010 Performance Appraisal had not been altered, he still would not have been eligible for a Top Performer Award for 2010, 2011, or "any time since then." Accordingly, it is recommended that there is no genuine issue of material fact on any claims of racial discrimination based upon Plaintiff not receiving any Top Performer awards and that any such claims must be dismissed as a matter of law.

### iii. March 1, 2012 Incident Involving Engine 62

Plaintiff alleges that he suffered discrimination based upon race due to his seventy-two hour suspension in 2012 and that Defendant displayed "[p]referential treatment of other coworkers." Defendant appears to concede that Plaintiff has established his prima facie case because he solely argues that there is no genuine dispute of material fact that Battalion Chief Adams, who made the

decision to suspend Plaintiff, "did not honestly believe that [Plaintiff] had violated the rules and regulations that he was charged with violating." As there does not appear to be any dispute as to Plaintiff's prima facie case, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the employee's suspension.

Defendant posits that Plaintiff was suspended for seventy-two hours without pay because Defendant damaged Shelby County property, failed to report the incident in a timely fashion, refused to give complete and accurate information in violation of Paragraph 34, and operated the apparatus in an unsafe, reckless or haphazard manner in violation of Paragraph 9. Defendant appears to further posit that the length of his suspension was due to Plaintiff's role as driver of the fire engine when the accident occurred.[10] Because Defendant has brought forth evidence that Plaintiff's suspension was based upon violations of Fire Department policies, the Court recommends that Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's suspension.

Thus, Plaintiff must establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, or that the stated reasons were insufficient to explain the defendant's action. Plaintiff has not offered any evidence of pretext. Instead, Plaintiff's central argument appears to be that the length of his suspension was longer than Dabbs's; however, evidence of being treated differently than similarly situated, non-protected employees goes to establish the prima facie case, which is not disputed. Even though the record reflects that Dabbs was only suspended for twenty-four hours for his incident involving property damage, this does not establish that Defendant's reasons for its decision

---

[10] Defendant does not make this argument in his Motion for Summary Judgment but does so in his questioning of Plaintiff at his deposition. Defendant relied upon those portions of his deposition questioning in support of his Motion for Summary Judgment.

to suspend Plaintiff for seventy-two hours in relation to his accident constitute pretext.

There is no evidence that Defendant's proffered reasons either had no basis in fact, were not the actual reasons, or were insufficient to explain its action. In fact, Plaintiff admits that he damaged both the fire engine and the cone, which were Shelby County property. This damage was the first basis for the suspension. Plaintiff further does not present any evidence to dispute that he refused to give complete and accurate information in violation of Paragraph 34 or that he operated the apparatus in an unsafe, reckless or haphazard manner in violation of Paragraph 9.

Plaintiff does dispute that he failed to report the incident in a timely fashion by his own testimony that he reported the incident to Russell "as soon as it happened," just "moments after." However, to establish pretext, Plaintiff "must allege more than a dispute over the facts" upon which the adverse employment action was based. *Octavia Payne v. Mueller Indus., Inc.*, No. 2:11-cv-2238-JTF-dkv, 2013 WL 3864818, at *4 (W.D. Tenn. July 24, 2013) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). Instead, Plaintiff must put forth evidence that the decisionmaker did not hold an "honest belief" that Plaintiff had engaged in certain prohibited conduct. *Payne*, 2013 WL 3864818, at *4-*5.

In the instant case, the record reflects that a full investigation was undertaken to determine what occurred in the March 1, 2010 accident and that the decisionmaker—Battalion Chief Adams—held a Loudermill hearing to make a final determination as to whether Plaintiff violated any Shelby County policies. Plaintiff was permitted to ask questions and present additional evidence at the Loudermill hearing but declined to do so.

The evidence before Battalion Chief Adams when he made his decision as to the appropriate disciplinary measures is set forth in his April 5, 2012 findings, which provides as follows regarding

the timing of Plaintiff's notification of Russell: "Instead of moving the apparatus, the pumper, from the location of the incident, you should have notified your Lieutenant prior to moving the pumper. The incident occurred at approximately 4:00 a.m., and you notified your Lieutenant at approximately 4:15 a.m. The Battalion Chief was not notified until 7:30 a.m. on 03-02-2012, approximately 27.5 hours later." There is no evidence that Plaintiff's testimony that he reported the incident to Russell "as soon as it happened," just "moments after," was ever presented to Battalion Chief Adams at the time he was tasked with determining the appropriate sanction for Plaintiff's violations. This is the case even though Plaintiff was permitted the opportunity to present evidence at his Loudermill hearing. Accordingly, it is recommended that there is no genuine issue of material fact as to whether Battalion Chief Adams had an honest belief that Plaintiff violated Shelby County policy and as to whether Defendant's proffered reasons constitute pretext. Therefore, it is recommended that Defendant's Motion for Summary Judgment on Plaintiff's Title VII claims of discrimination on the basis of race for imposing a seventy-two hour suspension following his March 1, 2012 accident be GRANTED.

### iv. *2012 Promotional Selections for Driver and Lieutenant*

Plaintiff alleges that his "promotion to Fire Lieutenant was illegally tampered with to purposely skip me over for promotion in July 2012/Aug 2012." Plaintiff does not allege any Title VII violations of racial discrimination on the basis of not being selected for the promotion to Driver; however, Plaintiff does allege a Title VII violation of racial discrimination on the basis of not being selected for the promotion to Lieutenant. Further, Defendant's Motion for Summary Judgment does not raise specific arguments as to why any Title VII claim regarding the 2012 promotional decisions fails as a matter of law; however, because Defendant has submitted significant evidence on this

issue, the Court will construe Defendant's Motion for Summary Judgment as requesting that this claim be dismissed.

Upon review, as summarized above, the Court recommends that Plaintiff's Complaint and Supplemental Complaint has not raised any claims based upon not being selected for promotion to Driver. With respect to Plaintiff's claims that he was illegally denied a promotion to Lieutenant, his claims appear to be based upon the assertion that his altered 2010 Performance Appraisal resulted in his denial of the promotion to Lieutenant in 2012. However, as set forth above, all eligible candidates for promotion to the rank of Lieutenant are given the same Performance Expectations score. Thus, the record reflects that there is no genuine issue of material fact as to whether any alterations to Plaintiff's 2010 Performance Appraisal affected the denial of Plaintiff's promotion to Lieutenant in 2012. Accordingly, it is recommended that Plaintiff's Title VII claim for discrimination on the basis of race for the failure to promote him to Lieutenant in 2012 fails as a matter of law.

### v. Whistleblower Claim

Finally, Plaintiff's Supplemental Complaint mentions "whistle blowing." However, Plaintiff's Complaint asserts that it is based solely on Title VII. It does not allege violations of any other federal or state law, including the Tennessee Public Protection Act ("TPPA"), Tennessee Code Annotated Section 50-1-304, and the Court recommends that no further claims should be construed from Plaintiff's use of this term. The Court further recommends that, while Defendant's Motion for Summary Judgment addresses any potential TPPA claims raised by Plaintiff's Complaint and Supplemental Complaint, consideration of this issue is unnecessary as the pleadings are recommended not to contain such a claim.

23

**IV.  Conclusion**

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be GRANTED.

**DATED** this 27th day of August, 2014.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**